UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TYLA D., | Case No.: 2:24-cv-00698-APG-BNW |
| Plaintiff | **Order Granting Boyd Gaming Corporation and MGM Defendants' Motions to Dismiss and Denying Plaintiff's Motion for Judicial Notice** |
| v. | |
| MGM RESORTS INTERNATIONAL, et al., | [ECF Nos. 15, 18, 55] |
| Defendants | |

Plaintiff T.D. sues several Las Vegas resorts alleging that they benefitted from her being sex trafficked at their casinos. T.D. brings claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) and the Child Abuse Victims' Rights Act (CAVRA), as well as claims under Nevada law for victims of human trafficking and for intentional infliction of emotional distress (IIED). Defendants Boyd Gaming Corporation and MGM Resorts International (on behalf of itself, Mandalay Resort Group, LLC, and MGM Grand Hotel, LLC, collectively, "MGM Defendants") move to dismiss the complaint as untimely and for failing to state a claim. T.D. argues that her claims are equitably tolled and meet the pleading requirements. She also requests that I take judicial notice of a newly published book. For the reasons outlined below, I grant the defendants' motions to dismiss. I deny T.D.'s motion for judicial notice and grant her leave to amend her complaint.

**I. BACKGROUND**

T.D. alleges that she was sex trafficked in Las Vegas and Los Angeles during two separate periods by a series of abusive traffickers.[1] The first trafficking period lasted from 2006 to 2007, while T.D. was 14 and 15 years old. She was forced by her traffickers to "walk the

---

[1] All facts are taken from the complaint (ECF No. 1).

carpet" at various Las Vegas casinos to attract customers for commercial sex. ECF No. 1 at 8. This trafficking period ended after she was arrested and placed in a youth correctional facility in 2007.

T.D. fell under the control of an abusive trafficker again in 2013. This trafficker also forced her to walk the carpet at Las Vegas casinos, specifically the MGM Grand, Mandalay Bay, and the Orleans. If T.D. refused to do sex work in the casinos, her trafficker would hit her. The trafficker also kept all the money she earned through commercial sex. To attract customers, T.D. dressed in sexually provocative clothing and lingered in the casinos by playing a few dollars at a slot machine by the elevators. After three months, T.D. managed to escape her trafficker and return to her family, where she "stay[ed] free for good." *Id.* at 10. In the years after her trafficking, T.D. suffered from nightmares, which continue to the present day.

T.D. alleges that the casinos had sophisticated security systems, which used facial recognition to "flag" her "as a suspiciously frequent visitor to each casino." *Id.* at 9. According to the complaint, casino employees knew she was engaged in commercial sex work and ignored her because doing otherwise would have been inconvenient to the employees and upsetting to casino guests. T.D. alleges that Las Vegas and the defendant casino operators have a history of tolerating commercial sex work that has allowed sex trafficking to flourish. And she alleges that casinos know that many women doing sex work are controlled by traffickers through force and other methods of coercion, but the casinos still draw a distinction between consensual prostitution and victims of sex trafficking.

## II. DISCUSSION

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.*

*SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). However, I do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017). A plaintiff must assert sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A. Federal Claims**

   1. Statute of Limitations for TVPRA

The defendants argue that T.D.'s federal claims under the TVPRA are time-barred because the last allegations took place more than 10 years before T.D. filed her complaint. T.D. responds that the limitation periods should be equitably tolled because of the emotional distress she suffered from being trafficked.

I may dismiss a claim as time-barred only if the running of the statute of limitation is "apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (quotation omitted). Thus, I cannot dismiss a claim unless the plaintiff undoubtedly fails to allege any set of facts proving the timeliness of the claim. *United States v. Page*, 116 F.4th 822, 825-26 (9th Cir. 2024).

Federal statutes of limitations are presumptively subject to equitable tolling. *Arellano v. McDonough*, 598 U.S. 1, 6 (2023). But equitable tolling requires T.D. to establish "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in

[her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quotation omitted).  T.D. must demonstrate that she has been "reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).  And "it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.* at 600.  "The burden of alleging facts which would give rise to tolling falls upon the plaintiff." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

The TVPRA requires all claims to be brought within 10 years after either the cause of action arose or the victim reaches 18 years of age, whichever is later. 18 U.S.C. § 1595(c).  T.D. alleges that her second round of trafficking occurred in "about 2013, not long before she turned twenty-one." ECF No. 1 at 8.  "After three months of abuse," T.D. left her trafficker and returned to her family "for good." *Id.* at 10.  Her trafficking thus ended no later than March 2014.  She filed her complaint on April 10, 2024. *Id.* at 14.  It is therefore apparent on the face of T.D.'s complaint that the limitation period expired on her TVPRA claims.

T.D. has not alleged facts to support equitable tolling.  She alleges that she had nightmares about her experience and suffered a "mental block" that made her believe she would not be taken seriously. ECF No. 1 at 10-11.  These allegations do not demonstrate extraordinary circumstances that prevented her from timely filing.  She also does not describe what efforts she took to diligently pursue her claim during the 10-year period.  I therefore dismiss as untimely her TVPRA claims against the MGM Defendants and Boyd Gaming Corporation but give her leave to amend her complaint if she can allege facts to support equitable tolling.  Because I grant leave

to amend, I will also address the defendants' other arguments as to why T.D.'s TVPRA and CAVRA claims should be dismissed.

### 2. TVPRA

The TVPRA imposes both criminal and civil penalties for sex trafficking. A victim of sex trafficking may sue (1) the perpetrator of their trafficking, and (2) "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged" in sex trafficking. 18 U.S.C. § 1595(a). T.D. concedes that she cannot bring a claim for perpetrator liability because she does not allege that she regularly stayed in the defendants' hotel rooms. ECF No. 26 at 2. She also concedes that Congress had not yet authorized beneficiary liability during her trafficking in 2006-07. *Id.* So she proceeds only on a beneficiary theory based on the three months of trafficking that began in 2013.

As a threshold matter, T.D. plausibly alleges that she is a victim under 18 U.S.C. § 1591(a), which prohibits several acts toward a person knowing or in reckless disregard of the fact that the person is being sex trafficked. Sex trafficking means the victim engaged in commercial sex acts either while under 18 years of age or due to force, threat of force, fraud, or coercion. 18 U.S.C. § 1591(a). T.D. plausibly alleges that her trafficker used force, threats of force, and coercion to make her engage in commercial sex acts. Thus, she is a "victim" with standing to sue under the TVPRA.

To bring a beneficiary claim under § 1595(a), T.D. must allege that the defendants "(1) knowingly benefitted (2) from participation in a venture (3) that [they] knew or should have known has engaged in trafficking" her. *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *3 (E.D. Cal. May 15, 2023) (simplified); 18 U.S.C. § 1595(a).

5

Participation in a venture means "an undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). The venture need not be a "sex-trafficking venture," and "can also be a business whose primary focus is not on sex trafficking." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (quotation omitted). Whether a participant in a venture knew or should have known that the venture engaged in trafficking imposes a negligence standard. *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1177 (9th Cir. 2022) ("The phrase 'knew or should have known' usually connotes negligence," which is "a less culpable mental state than actual knowledge or recklessness." (simplified)).

### a. Knowingly Benefit

T.D. argues that her sex work drove increased foot traffic in the casinos leading to increased gambling and drinking revenues, and that she gambled "at least a few dollars" while soliciting customers. ECF No. 26 at 11. Drawing every inference in T.D.'s favor, as I must at this stage, it is plausible that the casinos knowingly experienced increased visitation and revenues and also knew that she was engaged in prostitution. If tied to participation in a venture, "the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *G.G.*, 76 F.4th at 564 (simplified).

### b. Participation in a Venture

The defendants next argue that T.D. has not shown any venture between them and anyone involved in her trafficking. T.D. argues that the relevant ventures are the casinos themselves.

A venture under § 1595 can be an isolated act of sex trafficking, but "it can also be a business whose primary focus is not on sex trafficking." *Id.* at 554. Operating a casino is a commercial venture. Although the defendants argue that they cannot participate in a venture with themselves, it is reasonable to infer that operating a hotel and casino necessarily involves

many persons and entities taking part "in a common undertaking or enterprise involving risk and potential profit." *Red Roof Inns*, 21 F.4th at 725.

### c. The Defendants Knew or Should Have Known the Ventures Engaged in Sex Trafficking

T.D. fails to plausibly allege, however, that the casino ventures violated the TVPRA and that the defendants knew or should have known that the ventures violated the TVPRA. Although "participation in" a venture need not involve direct participation in sex trafficking, "[i]t is the venture that must violate Section 1591, and not the participant." *G.G.*, 76 F.4th at 559. TVPRA claims often involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business relationship.[2] But T.D. does not allege any such venture between the defendants and her traffickers. Rather, she alleges the casinos themselves are the venture. Because some part of the relevant venture must violate § 1591 and T.D. asserts that the casinos themselves are the ventures, T.D. must plausibly allege that the casinos or their employees were perpetrators under the TVPRA, which she concedes she cannot do.

To overcome this defect, T.D. argues that the defendants identified her as a sex worker and that they should have inferred based on probability that she was a trafficking victim. ECF

---

[2] *See e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to trafficker away from other guests and instructed johns to hurry up as they come and go); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D. Ga. Aug. 30, 2023) (hotel employees zip-tied the crash bar of a door to keep it from locking so that commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going again" when there were overt signs of sex trafficking); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (hotels had a "continuous business relationship" of renting rooms to traffickers).

No. 26 at 12 (alleging that the defendants "thus could have appreciated that there was a substantial risk she was being coerced"). But T.D. does not allege any facts to support the conclusion that the hotels knew that she was engaged in sex work because of trafficking or that their casino venture assisted, supported, or facilitated the trafficking.[3] It is not enough to establish a defendant's knowledge of general commercial sex taking place at its property. Instead, the complaint must plausibly allege that the defendant knew or should have known of a venture that involved sex trafficking by force, threat of force, fraud, or coercion. *A.B. v. Interstate Mgmt. Co., LLC*, --- F. Supp. 3d ----, 2024 WL 3905482, at *6 (D. Or. Aug. 22, 2024). T.D. does not allege any facts that should have put the casinos on notice that she was being trafficked even if the casinos might have known she was engaged in sex work.

      Because she has not plausibly alleged a venture that the defendants knew or should have known violated § 1591, T.D. has not plausibly alleged a beneficiary claim under the TVPRA. Although it seems unlikely that she can cure this defect given the defendants' lack of interaction with her traffickers and her concession that she cannot allege perpetrator liability against the defendants, I grant her leave to amend if she can allege facts to support a beneficiary claim.

## 2. CAVRA

      CAVRA allows a private right of action for persons who were victims of several crimes, including 18 U.S.C. § 1591, while a minor. 18 U.S.C. § 2255. The defendants argue, and T.D. concedes, that Congress did not authorize suits for beneficiary liability until December 23, 2008. ECF Nos. 18 at 16-17, 23; 26 at 2. T.D. was trafficked as a minor in 2006 and 2007, when only

---

[3] *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) ("To run afoul of § 1591, a defendant must knowingly benefit from and knowingly assist, support, or facilitate sex trafficking activities. Mere association with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation.").

8

perpetrator liability was available. Because T.D. also concedes that she cannot plausibly allege a perpetrator theory, she acknowledges that her CAVRA claims must be dismissed. ECF No. 26 at 2. Accordingly, I dismiss her CAVRA claims against the MGM Defendants and Boyd Gaming Corporation with prejudice.

### B. State Law Claims

I have supplemental jurisdiction over T.D.'s state law claims under 28 U.S.C. § 1367(a). I may decline to exercise supplemental jurisdiction if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Should one of these factors be present, I consider whether continuing to exercise supplemental jurisdiction promotes economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

I have dismissed T.D.'s federal claims over which I have original jurisdiction. I am not inclined to exercise supplemental jurisdiction over her state law claims if she cannot plausibly allege a federal claim. In addition to facing statute of limitations concerns, the state statutory claims raise unresolved issues of state law that are best determined by the Nevada courts, such that comity considerations weigh against exercising jurisdiction over them. The Supreme Court of Nevada has not interpreted NRS §§ 41.1399 and 41.13965, and the defendants raise concerns that may require certifying questions to that court. I therefore do not address the defendants' motion to dismiss T.D.'s state law claims at this time. If T.D. does not amend her complaint to

assert federal claims, I will dismiss her state law claims without prejudice to her pursuing those claims in state court. If. T.D. chooses to file an amended complaint, she is advised to consider the arguments the defendants raise in their motions when crafting an amended complaint.

### C.  Motion to Take Judicial Notice

T.D. requests that I take judicial notice of a book published in October 2024, entitled "Vegas Concierge: Sex Trafficking, Hip Hop, and Corruption in America." She argues that statements by former Las Vegas police officials in the book make her allegations more plausible. The MGM Defendants argue that the excerpts T.D. presents are not appropriate for judicial notice, are inadmissible hearsay, and are irrelevant.

Federal Rule of Evidence 201(b) allows me to judicially notice "a fact that is not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." While I may take judicial notice of the fact that the book was published, the book's contents are neither generally known in this court's territorial jurisdiction nor able to be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. So I deny T.D.'s motion to take judicial notice of the book's contents.

### III.  CONCLUSION

I THEREFORE ORDER that defendants Boyd Gaming Corporation, MGM Resorts International, Mandalay Resort Group, LLC, and MGM Grand Hotel, LLC's motions to dismiss (**ECF Nos. 15, 18**) **are GRANTED**. Plaintiff T.D. may amend her complaint by December 20, 2024. If she does not file an amended complaint by that date, I will decline to exercise supplemental jurisdiction over her state law claims and dismiss them without prejudice.

I FURTHER ORDER that Plaintiff T.D.'s motion to take judicial notice (**ECF No. 55**) is **DENIED**.

DATED this 19th day of November, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE